# 15-1164-cv

## United States Court of Appeals

*for the*

## Second Circuit

FLO & EDDIE, INC., a California Corporation,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

- v. -

SIRIUS XM RADIO, INC., a Delaware Corporation,

*Defendant-Appellant,*

DOES 1 THROUGH 10,

*Defendants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**OMNIBUS OPPOSITION OF
PLAINTIFF-APPELLEE FLO & EDDIE, INC.
TO MOTIONS FOR LEAVE TO FILE AMICUS BRIEFS**

HENRY GRADSTEIN
MARYANN R. MARZANO
HARVEY GELLER
GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
(323) 776-3100

*Attorneys for Plaintiff-Appellee Flo & Eddie, Inc.*

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 1

II.    SUMMARY OF FACTS ....................................................... 4

III.   LEGAL STANDARD ........................................................... 8

IV.    DUPLICATIVE AMICUS BRIEFS ARE DEVOID OF ANY

       UNIQUE PERSPECTIVE AND ARE NOT HELPFUL

       TO THE COURT ................................................................. 9

V.     AMICUS BRIEFS THAT PRESENT NEW ISSUES NOT

       RAISED BY PARTIES ARE NOT HELPFUL TO THE COURT ... 15

VI.    CONCLUSION ................................................................... 19

TABLE OF AUTHORITIES

**<u>Cases</u>**

*Capitol Records, Inc. v. Mercury Records Corp.*,
  221 F.2d 657, 663 (2d Cir. 1955) ............................................... 6, 10

*Capitol Records, Inc. v. Naxos of Am., Inc.*,
  4 N.Y.3d 540 (2005).................................................................2

*Capitol Records, Inc. v. Naxos of America, Inc.*,
  797 N.Y.S.2d 352 (2005).........................................................10

*Cellnet Communs. v. FCC*,
  149 F.3d 429, 443 (6th Cir. 1998) ............................................16

*Christian v. United States*,
  337 F.3d 1338 (Fed. Cir. 2003) ...............................................18

*Citizens Against Casino Gambling v. Kempthorne*,
  471 F. Supp. 2d 295, 311 (W.D.N.Y. 2007)................................9

*Dalombo Fontes v. Gonzales*,
  498 F.3d 1, 2 (1st Cir. 2007).....................................................16

*Downing/Salt Pond Partners, L.P. v. Rhode Island & Providence Plantations*,
  643 F.3d 16 (1st Cir. 2011)........................................................18

*Flo & Eddie Inc. v. Sirius XM Radio Inc.*,
  2014 U.S. Dist. LEXIS 139053 (C.D. Cal. Sept. 22, 2014) ...........5

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  2014 U.S. Dist. LEXIS 174907, 2014 WL 7178134
  (S.D.N.Y. Dec. 12, 2014) ..........................................................6

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  62 F. Supp. 3d 325 (S.D.N.Y. 2014) ..........................................5

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  Southern District of Florida, 13-CV-23182 (DPG).......................4

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  USDC, Southern District of New York, 13-CIV-5784 (CM) ...........4

ii

*Goldstein v. Cal.*,
    412 U.S. 546 (1973)...................................................................... 2, 18

*Halo Wireless, Inc. v. Alenco Communs. Inc. (In re Halo Wireless, Inc.)*,
    684 F.3d 581 (5th Cir. 2012) ...........................................................8

*Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*,
    199 Misc. 786, (Sup. Ct. 1950)......................................................2

*Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Co.*,
    101 NY.S.2d 483 (Sup. Ct. 1950), *aff'd*, 107 N.Y.S.2d 795
    (App. Div. 1951).............................................................................10

*Newton v. Diamond*,
    204 F. Supp. 2d 1244 (C.D. Cal. 2002) ........................................1

*NOW, Inc. v. Scheidler*,
    223 F.3d 615, 616 (7th Cir. 2000) ........................................ 4, 9, 14

*Onondaga Indian Nation v. New York*,
    97-CV-445, 1997 U.S. Dist. LEXIS 9168, at *7
    (N.D.N.Y. June 25, 1997)...............................................................9

*RCA Mfg. Co. v. Whiteman*,
    114 F.2d 86 (2nd Cir. 1940) ................................................. 6, 7, 9

*Ricci v. Destefano*,
    530 F.3d 88 (2d Cir. 2008) ...........................................................18

*Russian River Watershed Prot. Comm. v. City of Santa Rosa*,
    142 F.3d 1136 (9th Cir. 1998) ......................................................16

*Ryan v. CFTC*,
    125 F.3d 1062 (7th Cir. 1997) ................................................ 3, 14

*Strasser v. Doorley*,
    432 F.2d 567 (1st Cir. 1970)................................................. 8, 14

*Tiffany (NJ) Inc. v. eBay, Inc.*,
    600 F.3d 93, 105 n.9 (2d Cir. 2010) ............................................16

*Universal City Studios v. Corley*,
    273 F.3d 429 (2d Cir. 2001) ............................................................3

*Voices for Choices v. Ill. Bell Tel. Co.*,
    339 F.3d 542 (7th Cir. 2003) ................................................ 9, 11, 12

*Waring v. WDAS Broadcasting System*,
    194 A. 631 (Pa. 1937)....................................................................10

*Yip v. Pagano*,
    606 F. Supp. 1566, 1568 (D.N.J. 1985)........................................14

## Statutes

17 U.S.C. § 301(c) ............................................................... 1, 2, 5, 7

## Other Authorities

Barbara J. Fan Arsdale, 4 Am. Jur. 2d § 7 (updated May 2015) ...........................16

Fed. Ct. App. Manual § 32:14 (6th ed.)....................................................15

John Harrington, "Amici Curiae in the Federal Courts of Appeals: How Friendly
    Are They?," 55 Case W. Res. L. Rev. 667, 692-93 (2005)...........................9

Julie Ross, "*[Un]Happy Together: Why the Supremacy Clause Preempts State
    Law Digital Performance Rights in Radio-Like Streaming of Pre-1972
    Sound Recordings*" ..................................................................17

## Rules

Fed. R. App. Proc. 29(a) .................................................................8

Fed. R. App. Proc. 29(b)(1) ..............................................................8

I.    __INTRODUCTION__.

From the Victrola to iTunes, sound recordings fixed prior to February 15,
1972 ("pre-1972 sound recordings") are the historical backbone of the music
industry.[1]   Those recordings include the iconic hits of The Turtles, all of which are
owned by Flo & Eddie, Inc. ("Flo & Eddie"), including "Happy Together," "It
Ain't Me Babe," "She'd Rather Be With Me," "You Baby," "She's My Girl," and
"Elenore."  Pre-1972 recordings also comprise a significant amount of the music
that Sirius XM Radio, Inc. ("Sirius XM") sells on a daily basis to its 28 million
subscribers through its satellite and Internet radio systems.  However, despite using
pre-1972 recordings to build a massive multi-billion dollar business, Sirius XM
adopted a corporate policy pursuant to which it refused to obtain licenses or pay
any royalties in connection with pre-1972 recordings.

Sirius XM instituted its policy of not licensing pre-1972 recordings based on
its conclusion that those recordings are not protected by ***federal*** copyright law.
Indeed, they are not.  But what Sirius XM ignored is that federal law is completely
irrelevant, as states were given free rein by Congress to protect pre-1972
recordings until 2067 unburdened by any aspect of the Copyright Act.  *See* 17
U.S.C. § 301(c) ("With respect to sound recordings fixed before February 15,

---

[1] Recordings are to be distinguished from the musical compositions embodied in
those recordings.  *See e.g.*, *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-1249
(C.D. Cal. 2002).  Musical compositions are protected by federal copyright law
regardless of their date of creation and are not at issue in this litigation.

1972, any rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2067"); *see also Goldstein v. Cal.*, 412 U.S. 546 (1973). And, as the District Court correctly recognized in this case, New York has long provided this unburdened protection. What New York has protected – and what it continues to protect – are the recorded artistic performances embodied in pre-1972 recordings – in other words, the sounds that Sirius XM sells to its subscribers. *See e.g.*, *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540 (2005); *Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786 (Sup. Ct. 1950).

New York law made Sirius XM's loss at the District Court both predictable and fully justified. Thus, the shock, hand-wringing, and end of the world prognostications that permeate the seven amicus briefs filed in support of Sirius XM's current appeal are wildly overblown and in large part simply echo the "music wants to be free" mantra that has appeared in so many piracy cases. But at this stage of the appellate process, the critical issue is not the merits of what the seven proposed amici have to say, but rather whether those amici have satisfied the standard for obtaining leave of court to file their briefs.

Six of the seven amicus briefs seem to have been written with an eye towards redundancy. They not only mimic and parrot Sirius XM's opening brief and the arguments made by Sirius XM at the District Court, but amici duplicate

2

each other's efforts and, in the case of two of them (National Association of Broadcasters and New York State Broadcasters Association) purport to represent the same constituencies and interests. As Judge Richard Posner aptly observed, "[t]he vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an abuse." *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997). Perhaps the greatest example of that abuse here is that one of six duplicative amicus briefs is actually written by the lawyer and the law firm who lost the summary judgment ***in this case*** and was thereafter replaced by Sirius XM. Now, just a few months later, that same lawyer is amicus counsel for a different party making the same arguments as Sirius XM.

Duplication is not the only problem. Two of the amicus briefs make arguments that Sirius XM has not raised on appeal and, thus, have been waived. Amicus are not permitted to raise issues that the parties to the litigation have not raised. *Universal City Studios v. Corley*, 273 F.3d 429, 445 (2d Cir. 2001). If they were, the appellate process would be unconstrained by the issues that the appellant is actually pursuing.

Ultimately, the seven amicus briefs are a burden upon the court and offer little more than dramatically increasing the word limitation of Sirius XM's brief.

3

*NOW, Inc. v. Scheidler*, 223 F.3d 615 (7th Cir. 2000). But for purposes of this opposition, Flo & Eddie will focus on the four most egregious briefs – the two that under any analysis are nothing more than a rehash of Sirius XM's brief (Pandora [Dkt. 66] and Various Professors I [Dkt. 64]) and the two that make arguments that Sirius XM has indisputably waived and is not pursuing on appeal (NAB [Dkt. 69] and Various Professors II [Dkt. 58]).

## II.  SUMMARY OF FACTS.

Flo & Eddie is a corporation that is owned by two of the founding members of The Turtles. It exploits The Turtles' recordings in order to generate an income. So too does Sirius XM – and therein lies the problem. Because Sirius XM publicly performs and reproduces – without licenses – pre-1972 recordings as part of its satellite and internet services, on August 16, 2013, Flo & Eddie filed this action against it, alleging on behalf of itself and a class of owners of pre-1972 recordings claims for common law copyright infringement and unfair competition. In addition to this action, because pre-1972 recordings are governed on a state-by-state basis, Flo & Eddie also filed two additional federal class actions: one in California on August 1, 2013, *Flo & Eddie, Inc. v. Sirius XM Radio*, Inc., USDC, Central District of California, 13-CV-05693 (PSG) (the "California Action"), and one in Florida on September 3, 2013, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, Southern District of Florida, 13-CV-23182 (DPG) (the "Florida Action").

4

On May 30, 2014, Sirius XM filed the motion for summary judgment that is the subject of this appeal. The primary issue raised by Sirius XM in its motion was its claim that the public performance right is not one of the rights inherent in the ownership of pre-1972 recordings. Rather than supporting its motion with New York law, Sirius XM instead relied on the federal law as it relates to **post**-1972 recordings, including a lengthy discussion of the history of the performance right in sound recordings under the federal Copyright Act, Congressional testimony and legislative history, Reports to Congress from the United States Copyright Office, and a study by the United States Copyright Office. All of Sirius XM's so-called "evidence" had nothing to do with New York law, but Sirius XM hoped to use it to limit New York law, ironically in direct violation of 17 U.S.C. § 301(c).

Fortunately, the District Court recognized that New York law was the beginning and the end of its analysis. Therefore, on November 14, 2014, the District Court denied Sirius XM's motion for summary judgment and found that the performance right was indeed one of the rights inherent in the ownership of pre-1972 recordings under New York law. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 62 F. Supp. 3d 325 (S.D.N.Y. 2014).[2] As a result of losing its motion, Sirius XM fired its counsel and retained new counsel who immediately filed a

---

[2] The District Court in the California Action made a similar ruling under California law. *See Flo & Eddie Inc. v. Sirius XM Radio Inc.*, 2014 U.S. Dist. LEXIS 139053 (C.D. Cal. Sept. 22, 2014).

motion for reconsideration.  In that motion, new counsel argued that *RCA Mfg. Co. v. Whiteman*, 114 F.2d 86 (2nd Cir. 1940) was not considered by the District Court and compelled a different result.  What new counsel failed to acknowledge, however, was that *Whiteman* was overruled by the Second Circuit over 60 years ago in *Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657 (2d Cir. 1955).  Once more (and again not surprisingly), Sirius XM lost.  *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2014 U.S. Dist. LEXIS 174907, 2014 WL 7178134 (S.D.N.Y. Dec. 12, 2014).

Sirius XM then sought certification from the District Court of its rulings on the motions for summary judgment and reconsideration so that it could pursue an interlocutory appeal.  On February 10, 2015, the District Court granted Sirius XM's request.  Flo & Eddie did not oppose Sirius XM's subsequent application to the Second Circuit.  Thus, on April 15, 2015, the Second Circuit accepted the appeal.

On July 29, 2015, Sirius XM filed its opening brief (the "Opening Brief").  Within the following week, seven amicus curiae parties filed motions with the Second Circuit to offer briefing in support of Sirius XM.  These prospective amicus curiae are as follows:

1.  The Electronic Frontier Foundation ("EFF");

2.  Public Knowledge ("PK");

3. The National Association of Broadcasters ("NAB");

4. The New York State Broadcasters Association (NYSBA");

5. Pandora Media, Inc. ("Pandora");

6. Various professors ("Various Professors I") -- Howard Abrams, Brandon Butler, Michael Carrier, Michael Carroll, Ralph Clifford, Brian Frye, William Gallagher, Eric Goldman, James Grimmelmann, Yvette Liebesman, Brian Love, Tyler Ochoa, David Olson, David Post, Michael Risch, Matthew Sag, Rebecca Tushnet, and David Welkowitz; and

7. Various professors (Various Professors II") -- Gary Pulsinelli, Julie Ross, and Peter Jaszi

All seven proposed amicus briefs are deeply flawed from a merits perspective, almost universally joining with Sirius XM in relying upon inapposite principles of federal copyright law to urge for limitations on state law property rights in direct contravention of 17 U.S.C. § 301(c), or urging the court to rule based on policy arguments instead of the actual law before it. Five of the amicus even go so far as to duplicate Sirius XM's reliance on the overruled case of *Whiteman*. However, Flo & Eddie recognizes that disagreement with the merits is the province of its responding brief. Therefore, that is not the purpose of this opposition. This opposition instead focuses on four of the amicus briefs that cross

the line from merely being erroneous in their advocacy to not even coming close to satisfying the standard for leave being granted.  Those briefs are:

- Pandora (Dkt. 66) and Various Professors I (Dkt. 64), both of which mimic Sirius XM's Opening Brief and arguments and are thus duplicative and unnecessary; and

- Various Professors II (Dkt. 58) and NAB (Dkt. 69), both of which raise arguments that were not raised by Sirius XM and are thus waived and not before the Court.

## III.   LEGAL STANDARD.

Pursuant to Fed. R. App. Proc. 29(a), absent consent from the opposing party, amicus curiae can only file a brief by leave of court.  Flo & Eddie has not consented to the filing of any of the seven amicus briefs.  As such, leave is necessary for all of them.  See *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970) ("a district court lacking joint consent of the parties should go slow in accepting, and even slower in inviting, an amicus brief unless, as a party, although short of a right to intervene, the amicus has a special interest that justifies his having a say, or unless the court feels that existing counsel may need supplementing assistance"). "Whether to permit a nonparty to submit a brief, as amicus curiae, is, with immaterial exceptions, a matter of judicial grace." *Halo Wireless, Inc. v. Alenco Communs. Inc. (In re Halo Wireless, Inc.)*, 684 F.3d 581,

8

596 (5th Cir. 2012) (quoting *NOW, Inc*, 223 F.3d at 616). The fundamental requirement is that the amicus brief must be "relevant" and "desirable." Fed. R. App. Proc. 29(b)(1). *See also* John Harrington, "Amici Curiae in the Federal Courts of Appeals: How Friendly Are They?," 55 Case W. Res. L. Rev. 667, 692-93 (2005) (noting that "[s]ince there is very little value in allowing broad systematic amicus participation in federal appeals court, efforts to restrict participation are appropriate").

## IV.   DUPLICATIVE AMICUS BRIEFS ARE DEVOID OF ANY UNIQUE PERSPECTIVE AND ARE NOT HELPFUL TO THE COURT.

The primary reason to allow amicus briefing is that the amici "offer insights not available from the parties" to the case, thereby aiding the court. *Citizens Against Casino Gambling v. Kempthorne*, 471 F. Supp. 2d 295, 311 (W.D.N.Y. 2007) (quoting *Onondaga Indian Nation v. New York*, 97-CV-445, 1997 U.S. Dist. LEXIS 9168, at *7 (N.D.N.Y. June 25, 1997) (further citation omitted). However, where an amicus brief "essentially duplicates a party's brief," it fails to achieve this purpose and should not be entertained by the courts. *Voices for Choices v. Ill. Bell Tel. Co*., 339 F.3d 542, 544 (7th Cir. 2003); *see also NOW, Inc.,* 223 F.3d at 617. This is the case with virtually all of the proposed amicus briefs, but most certainly with respect to the briefs filed by Pandora and Various Professors I.

In the case of the Various Professors I brief, it offers the exact same arguments found in Sirius XM's Opening Brief, including:

1. That the Second Circuit's decision in *Whiteman* rejected the prior decision of *Waring v. WDAS Broadcasting System*, 194 A. 631 (Pa. 1937) to establish a prevailing consensus on the rights accorded to sound recordings under common law – namely, that they did not include a right to control public performances. *Compare* Various Professors I brief pp. 5-7 *with* Sirius XM Opening Brief pp. 2, 8, 10-12.

2. That *Whiteman* was not abrogated by the later decisions of *Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Co.*, 101 NY.S.2d 483 (Sup. Ct. 1950), *aff'd*, 107 N.Y.S.2d 795 (App. Div. 1951), *Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657 (2d Cir. 1955), or *Capitol Records, Inc. v. Naxos of America, Inc.*, 797 N.Y.S.2d 352 (2005) because those cases only concern the reproduction and distribution rights, not the public performance right. *Compare* Various Professors I brief pp. 7-12 *with* Sirius XM Opening Brief pp. 13-20.

3. That recognizing a performance right under New York common law would be highly disruptive to the broadcast industry. *Compare* Various Professors I brief pp. 11-12 *with* Sirius XM Opening Brief pp. 1-2.

4. That recognizing a performance right under New York common law would extend New York law beyond its borders.  *Compare* Various Professors I Brief pp. 11-12 *with* Sirius XM Opening Brief pp. 36-48.

5. That recognizing a performance right under New York common law would render Sirius XM unable to comply due to FCC prohibitions on tailoring its satellite broadcasts by state.  *Compare* Various Professors I brief pp. 11-12 *with* Sirius XM Opening Brief pp. 9-10. 43-48.

6. That the creation of any public performance rights should be handled by the legislature rather than by the courts.  *Compare* Various Professors I brief pp. 12 *with* Sirius XM Opening Brief pp. 3-4, 9, 20-21,

7. That the numerous historical attempts by the recorded music industry to obtain a federal performance right for sound recordings by bemoaning the fact that it could not otherwise demand compensation for those performances evidenced an understanding that no analogous common law performance rights existed.  *Compare* Various Professors I brief pp. 13-18 *with* Sirius XM Opening Brief pp. 22-30.

There is no way to read the Various Professors I brief as doing anything other than plowing the same ground as Sirius XM's Opening Brief.  That is an improper use of the amicus process.  As in *Voices for Choices,* "[t]his is not a case in which a party is inadequately represented, or the would-be amici have a direct

11

interest in another case that may be materially affected by a decision in this one, or they are articulating a distinctive perspective or presenting specific information, ideas, arguments, etc. that go beyond what the parties whom the amici are supporting have been able to provide." *Voices for Choices*, 339 F.3d at 545. The Various Professors I brief merely repeats Sirius XM's arguments and therefore does not fulfill the required purpose of an amicus brief.

The arguments contained in the Pandora brief are also strikingly similar to those offered by Sirius XM, which is explained by the fact that it was authored by the same lawyers at Weil, Gotshal & Manges who represented Sirius XM in this very case. Indeed, Weil, Gotshal & Manges (and Bruce Rich in particular) drafted the motion for summary judgment that is the subject of the current appeal. Weil, Gotshal & Manges was replaced by Sirius XM after Sirius XM lost that motion.

Given Pandora's use of Sirius XM's prior counsel to write its amicus brief, it is not surprising that nearly all of the arguments made in the Pandora brief are also made by Sirius XM, including:

1. That any public performance right for pre-1972 recordings should be made by the legislature rather than the courts. *Compare* Pandora brief pp. 4-5, 9-13 *with* Sirius XM Opening Brief pp. 3-4, 9, 20-21, 30.

2. That federal copyright protections were first extended to sound recordings solely to deter record piracy. *Compare* Pandora brief pp. 16-17 *with* Sirius XM Opening Brief pp. 23-24.

3. That the eventual creation of a federal public performance right in post-1972 recordings was enacted only after long deliberation and careful balancing by Congress. *Compare* Pandora brief pp. 5-6, 9-13, 18-20 *with* Sirius XM Opening Brief pp. 9, 21-22, 26-28.

4. That industry efforts to establish federal protections for sound recordings reflected an understanding that similar protections were not afforded to sound recordings under the common law. *Compare* Pandora brief pp. 13-18 *with* Sirius XM Opening Brief pp. 24=30.

5. That the state common law right in public performances declared by the District Court lacks the carefully drawn boundaries provided by Congress to accommodate competing interests. *Compare* Pandora brief pp. 6, 20-23 *with* Sirius XM Opening Brief pp. 19-20, 28-29.

6. That upholding the District Court's ruling would force nationwide broadcasters to remove recordings from their services, including in states where, by statute or prior judicial decision, the claimed existence of a public performance right in pre-1972 recordings has

13

been expressly denied. *Compare* Pandora brief pp. 6-7, 23-26 *with* Sirius XM Opening Brief pp. 43-47.

7.  That the District Court's ruling upends the settled expectations of not only the broadcast industry, but numerous other types of businesses, such as bars, restaurants, and disc jockeys. *Compare* Pandora brief pp. 23-24, 27 *with* Sirius XM Opening Brief pp. 1-2, 19.

The Pandora Brief is not only duplicative, but its survey of the "numerous industries" that it claims would be affected by an affirmance of the District Court's decision (Pandora Brief, pp. 23-29) violates yet another rule for amici – it argues facts that are not in the record and not correctable on appeal. Those types of arguments are disfavored. *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985); *accord Strasser*, 432 F.2d at 569 (noting that "an amicus who argues facts should rarely be welcomed").[3]  While Pandora may be eager to "inject interest-group politics into the federal appellate process by flaunting the interest of [these industries] in the outcome of the appeal," *NOW, Inc*., 223 F.3d at 617, it does not present any "unique information or perspective that can help the court beyond the

---

[3] The brief proposed by the NAB also devotes a significant portion of its brief arguing facts that are nowhere to found in the record, including that record companies encouraged and "enormously" benefit from the free use of their recordings by radio broadcasters and that The Turtles abandoned their public performance right based on the "extensive solicitation of radio stations" in the 1960s.  *See* NAB Brief, pp. 2, 4-11, 27.

14

help that the lawyers for the parties are able to provide." *Ryan,* 125 F.3d at 1063. Indeed, Pandora does not explain how its status as an "Internet radio service" (Pandora Brief, p. 1) grants it insight to speak for "Satellite…Radio Services" (Pandora Brief, pp. 24-26), "Traditional Radio Broadcasters" (Pandora Brief, p. 26), "Restaurants, Bars, And Other Small Businesses" (Pandora Brief, p. 27), or "Local Television Broadcasters and Cable Television System Operators" (Pandora Brief, pp. 27-29). It does not, which renders its "advocacy" on behalf of those groups suspect and devoid of proper amicus perspective.

Accordingly, because the briefs by Various Professors I and Pandora merely restate arguments already made by Sirius XM and are devoid of any unique perspective that would inform these proceedings, they should be denied leave by the Court.

## V. AMICUS BRIEFS THAT PRESENT NEW ISSUES NOT RAISED BY THE PARTIES ARE NOT HELPFUL TO THE COURT.

Two of the proposed amicus briefs violate the most basic tenet of amicus advocacy; namely, limiting their arguments to issues that are actually on appeal. Indeed, the law is clear that an amicus "cannot raise issues that the parties could have but did not." Fed. Ct. App. Manual § 32:14 (6th ed.) (updated May 2015). This limitation forecloses consideration of the Various Professors II amicus brief, which argues that the District Court's decision should be reversed based on the

15

Supremacy Clause, as well as the NAB amicus brief, which argues issues of claim abandonment, the nature of distribution, and necessary elements of unfair competition. For any of these issues to be relevant, they would first need to be raised by Sirius XM, and that has not occurred.

Where no party has raised an argument advanced in an amicus brief, it is properly disregarded by the courts. *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010); *see also Cellnet Communs. v. FCC*, 149 F.3d 429 (6th Cir. 1998) ("While an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties."); *Dalombo Fontes v. Gonzales*, 498 F.3d 1 (1st Cir. 2007) ("[W]e will not address an issue raised by an amicus that was not seasonably raised by a party to the case"); *Russian River Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1141 (9th Cir. 1998) ("We do not review issues raised only by an amicus curiae."); Barbara J. Fan Arsdale, 4 Am. Jur. 2d § 7 (updated May 2015) ("In general, an amicus curiae must accept the case before the reviewing court as it stands on appeal, with the issues as framed by the parties. ... [W]here a party does not adopt an amicus curiae argument in its brief, the argument is waived on appeal.").

Although Sirius XM was entirely aware of the Supremacy Clause argument advanced in the Various Professors II brief, it specifically chose not to argue this point in its Opening Brief (or, indeed, at any time in this case). In fact, Sirius XM

16

*only* cited the article "*[Un]Happy Together: Why the Supremacy Clause Preempts State Law Digital Performance Rights in Radio-Like Streaming of Pre-1972 Sound Recordings* for the limited proposition that the Digital Performance Right in Sound Recordings Act of 1995 "created a new, narrowly-defined performance right that simply had not existed for sound recordings under either federal or state law." (Opening Brief, p. 26) Beyond appearing within the title of that article, the words "Supremacy Clause" are nowhere to be found in Sirius XM's Opening Brief or in any of its briefing before the District Court. The issue is simply not before the Court, thus, rendering the proposed Various Professors II brief useless to the court.

  The proposed amicus brief from the NAB Brief also tries to inject new issues that are not on appeal. Indeed, in sections II and III of that brief, the NAB argues that Flo & Eddie "abandoned" its claims by soliciting radio airplay, whether or not public performance is a "distribution" of a sound recording, and whether Flo & Eddie established "bad faith" or "special damages" for unfair competition. However, Sirius XM has cabined its appeal to argue only three points: (1) that New York common law does not encompass a right of public performance in pre-1972 sound recordings, (2) that its reproductions of pre-1972 recordings constitute fair use, and (3) that enforcement of a public performance right would violate the Commerce Clause. It does not raise the issues presented in sections II and III of the NAB brief.

Because Sirius XM has not raised any of these issues on appeal, an amicus party's brief arguing them cannot be considered relevant, desirable, or in any way useful to the Court. Amici are not permitted to step into a party's shoes and make legal arguments that the party did not. *See Ricci v. Destefano*, 530 F.3d 88, 90 (2d Cir. 2008) (declining to consider legal theory where "the plaintiffs did not argue the [particular] theory; a non-party raised it in an amicus brief"); *Downing/Salt Pond Partners, L.P. v. Rhode Island & Providence Plantations*, 643 F.3d 16, 28 (1st Cir. 2011) ("'[A]mici may not make up for waiver by a party,' [Citation], and may not introduce a new argument into a case, [Citation]."); *Christian v. United States*, 337 F.3d 1338, 1345 (Fed. Cir. 2003) *decision modified and remanded*, 60 Fed. Cl. 550 (2004) ("Since none of the parties has made or adopted [a specific amicus party's] argument[s], we decline to consider them").

In short, because Sirius XM made the decision not to argue the Supremacy Clause (likely because it fully recognized that this exact issue was already considered and rejected by the United States Supreme Court in *Goldstein*) nor the various issues raised by the NAB in sections II and III of its brief, these issues are not before the Court and there is no role for amici to offer their perspective on those issues.

## VI.    CONCLUSION.

For all the foregoing reasons, the Motions of Pandora, Various Professors I,

Various Professors II, and NAB for Leave to File Briefs as Amicus Curiae should

be denied.

Dated:    August 14, 2015                    GRADSTEIN & MARZANO. P.C.


By:   /s/ Harvey Geller                 _

Henry Gradstein
Maryann Marzano
Harvey Geller
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Telephone: (323) 776-3100

*Attorneys for Plaintiff-Appellee*
*Flo & Eddie, Inc.*