# 15-1164-cv

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

FLO & EDDIE, INC., A CALIFORNIA CORPORATION, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED.

*Plaintiff-Appellee,*

v.

SIRIUS XM RADIO, INC., A DELAWARE CORPORATION,

*Defendant-Appellant,*

DOES 1 THROUGH 10,

*Defendant.*

―――――――――――――――――――――――――――――――

On Appeal from the United States District Court
for the Southern District Court of New York
Hon. Colleen McMahon, District Judge

―――――――――――――――――――――――――――――――

**REPLY OF THE NATIONAL ASSOCIATION OF BROADCASTERS
IN SUPPORT OF MOTION FOR LEAVE TO FILE
*AMICUS CURIAE* BRIEF
IN SUPPORT OF SIRIUS XM RADIO, INC.**

| | |
|---|---|
| Rick Kaplan | Stephen B. Kinnaird |
| NATIONAL ASSOCIATION | PAUL HASTINGS LLP |
| OF BROADCASTERS | 875 15th Street, NW |
| 1771 N Street, NW | Washington, DC 20005 |
| Washington, DC 20036 | (202) 551-1700 |
| (202) 429-5430 | stephenkinnaird@paulhastings.com |
| | |
| | *Counsel for* Amicus Curiae |
| | *National Association of Broadcasters* |

Flo & Eddie, Inc. improperly attempts to strike the entire 30-page brief of the National Association of Broadcasters ("NAB") on the basis of objections to issues raised in the final four pages, an overreach that this Court should not permit. Flo & Eddie, Inc. raises no colorable objection to the first 26 pages of NAB's brief, which is devoted to offering NAB's unique perspective, as a national association representing thousands of radio broadcasters nationwide, on the central issue in this appeal. NAB argues that this Court should not recognize a common-law copyright in the performance of sound recordings. NAB's brief explains that copyright and performance rights were distinct at common law, and that the rationales of common-law copyright and performing rights do not apply to the radio broadcast of sound recordings. NAB further demonstrates that the recording and radio industry exist in a unique symbiosis whereby radio broadcasting *creates* value in sound recordings rather than deprives the rights holder of the value of the work, which is a major reason why Congress has always exempted over-the-air broadcasting from any federal copyright in sound recordings (even as it has granted copyright protection in post-1972 sound recordings with regard to subscription broadcasting of the kind that Sirius XM performs). NAB Br. 1-26. NAB's principal arguments do not duplicate those of Sirius XM or other *amici*, and they will aid this Court in the resolution of this appeal.

As to the arguments to which Flo & Eddie objects in Sections II and III of

1

the brief, those issues are closely related to the issues on appeal and within the power and discretion of the Court to decide, although concededly not raised by Sirius XM. NAB argues in Section I that this Court should not recognize a common law copyright in the performance of sound recordings in part because the New York Court of Appeals has limited the strict-liability tort of copyright infringement to unlawful reproduction, for which bad faith is presumed, whereas performing rights (or "playright") may be actionable as unfair competition where there is proven bad-faith misappropriation of the plaintiff's work and special damages. NAB Br. 14-19. In the challenged part of the brief, NAB then points out succinctly that the district court ignored those distinctions by (1) falsely assimilating broadcast "performance" to unauthorized "distribution" of a work in finding Sirius XM liable for copyright infringement, and further effectively disregarding the requirements of (2) bad faith and (3) special damages in the tort of unfair competition. NAB Br. 27-30.

Recognizing that this Court frequently will not decide issues not raised by the aggrieved party, NAB asked the Court (if it does not decide the issues *sua sponte*) to "at least expressly withhold approval of the rulings below." NAB Br. 28. It is proper for an *amicus curiae* to urge a court to limit the scope of its holding and avoid straying into error if it were to affirm any part of the district court's order. While the Court has discretion to decline to consider the issues

2

raised in sections II and III, Flo & Eddie, Inc. presents no authority or rationale for denying leave to file the brief *in toto*, which is devoted principally to the core issue on appeal.

I.  **FLO & EDDIE, INC. RAISES NO COLORABLE OBJECTION TO THE PRINCIPAL ARGUMENTS IN NAB'S AMICUS BRIEF.**

Flo & Eddie, Inc. overreaches by attempting to have this Court refuse the filing of an entire 30-page brief based on an objection not to the vast majority of the presentation made in the brief, but only to arguments made in the last four pages. Flo & Eddie should not be permitted to avoid the entire contribution of an *amicus* who has demonstrated an interest in the case and "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case," F.R.A.P. 29(b), simply because it objects to a minor part of that brief. While this Court has the discretion whether to consider arguments raised by an *amicus* but not by the parties, *see infra*, Flo & Eddie, Inc. identifies no case in which any court has denied a proper *amicus* leave to file a brief *in toto* simply because it raises *additional* issues not briefed by a party. *See* Opp. 18.

The majority of NAB's brief presents its unique perspective, on behalf of the nation's thousands of radio broadcasters, to the core issues in this case. The brief sets forth relevant background about Congress's exemption for over-the-air broadcasting from federal copyright and the ways in which record companies, through their promotion and solicitation of free radio airplay, have reaped the

3

benefits of radio performance of recordings. The proposed *amicus* brief explains the evolution of the symbiosis of the record and radio industries and its implications for the questions that the parties have presented to the Court in this appeal. The brief also explains the common-law distinction between playright and copyright, and how the district court's opinion erred by failing to recognize that distinction. The brief further discusses the chaos and uncertainty that would ensue from affirmance of the district court's ruling, and urges the court in the alternative to deny retroactivity or to limit any common-law copyright to the scope of federal copyright in post-1972 works. NAB Br. 1-26. The brief's main contribution, then, is to provide relevant analysis, background and perspective to the Court on the core issues in this case. That contribution should not be negated simply because Flo & Eddie, Inc. objects that certain *additional* arguments at the end of the brief, which this Court has discretion to consider or ignore, were not raised by Sirius XM.

Flo & Eddie's lone objection to this crux of the NAB's brief comes in a footnote. Flo & Eddie, Inc. argues that NAB's brief raises "facts that are nowhere to be found in the record" with regard to the history of record companies' soliciting and benefitting from free performance of recordings via radio broadcast. Opp. 14 n.3. This argument defies the storied tradition of the "Brandeis brief," for it is well accepted that one of the primary roles of *amici curiae* is to present and collect "legislative facts" relevant to the definition of a legal rule, whether in the record or

4

not. As a case Flo & Eddie relies on notes, "the criterion for deciding whether to permit the filing of an amicus brief" includes "whether the brief will assist the judges by presenting ideas, arguments, theories, insights, *facts, or data that are not to be found in the parties' briefs.*" See *Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) (emphasis added). Moreover, a leading scholar has commented, in distinguishing between legislative and adjudicative facts,

> In determining the content or applicability of a rule of domestic law, the judge is unrestricted in his investigation and conclusion. He may reject the propositions of either party or of both parties. He may consult the sources of pertinent data to which they refer, or he may refuse to do so. He may make an independent search for persuasive data or rest content with what he has or what the parties present.

Edmund M. Morgan, *Judicial Notice*, 57 Harv. L. Rev. 269, 270-79 (1944).[1]

There is nothing improper in an *amicus* providing background facts that are relevant to the determination of the legal issue, particularly when the Court is

---

[1] The Supreme Court has repeatedly relied on *amicus* briefs to assist the court in understanding legislative or specialized facts that provide context for the Court's consideration. In *Grutter v. Bollinger*, the majority opinion relied on eight *amicus* briefs for specific factual points, such as the prevalence of race-conscious policies nationwide. *See* 539 U.S. 306, 323 (2003); *see also Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 266 n.1 (1990) (relying on *amicus* brief for the explanation of a "persistent vegetative state"). Similarly, in another recent case, the Supreme Court relied on at least five *amicus* briefs in discussing facts outside the record related to the smuggling of contraband into jails, including as support for the point that "[e]xperience shows that people arrested for minor offenses have tried to smuggle prohibited items into jail." *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510, 1518-20 (2012).

determining a new rule of common law in light of "changing technological and economic aspects" of the question. *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 555 (2005) (internal question marks omitted). This Court cannot properly resolve whether a common law copyright exists in the performance of sound recordings without understanding the history of record industry solicitation of airplay and the economics of creating value in sound recordings. NAB, as the leading association of radio broadcasters, is uniquely positioned to supply that perspective to the Court.

## II. NAB'S RAISING OF ADDITIONAL, CLOSELY RELATED ISSUES IMPORTANT TO A PROPER RESOLUTION OF THE APPEAL DOES NOT JUSTIFY DENIAL OF LEAVE TO FILE THE BRIEF.

Although courts commonly confine review to the issues raised by the parties, a court may "reach issues raised solely by amicus filings in our discretion." *Kaczmarczyk v. I.N.S.*, 933 F.2d 588, 595 (7th Cir. 1991); *Bridges v. City of Bossier*, 92 F.3d 329, 335 (5th Cir. 1996) (courts, in their discretion, may "consider different arguments raised by amicus curiae on issues raised by appellant."); *cf. Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 413 (2d Cir. 2014) (considering issue "not raised or ruled upon below," but argued by *amici*). Indeed, the Supreme Court itself has considered and even decided cases on issues raised solely by *amici*. *See, e.g.*, *White v. Illinois,* 502 U.S. 346, 352 (1992) ("We consider as a preliminary matter an argument not considered below but urged by

6

the United States as *amicus curiae* in support of respondent."); *Turner v. Rogers*, 131 S. Ct. 2507, 2521 (2011) (Thomas, J., dissenting) (observing that majority opinion decided violation of due process "[s]olely at the invitation of the United States as *amicus curiae*" when the party only raised the question of whether it had a right to counsel in civil contempt proceedings); *see also Mapp v. Ohio*, 367 U.S. 643, 646 n.3 (1961) (overruling prior precedent on urging of *amicus curiae*, although appellant "did not insist that [the case] be overruled"). The Supreme Court decided the landmark retroactivity case of *Teague v. Lane* even though "[t]he question of retroactivity . . . [had] been raised only in an amicus brief." *Teague v. Lane*, 489 U.S. 288, 300 (1989).

The issues raised in sections II and III of NAB's brief are closely related to the primary issue on appeal and worthy of this Court's consideration whether it chooses to apply them to Sirius XM or not. The history of aggressive promotion of radio airplay by record companies should defeat any claim of common law copyright in the performance of sound recordings, NAB Br. 4-14, 19-21, but it is proper for the radio industry to present briefly its alternative position in Section II that record companies that engage in such promotion have abandoned any such right, at least as to over-the-air broadcasting. NAB Br. 27. Moreover, as discussed above, *supra* at 2, NAB's brief explains that the New York Court of Appeals has limited the strict-liability tort of common-law copyright infringement to

7

unauthorized reproduction, and other forms of infringement of property rights may be actionable at most under the doctrine of unfair competition if commercial immorality is present. NAB Br. 14-19. If the Court agrees with this analysis and draws such a distinction, it must understand that the district court's treatment of the separate torts of copyright infringement and unfair competition is fraught with error. Hence, NAB has set forth in Section III of its brief why the district court erred in (1) characterizing radio "performance" of a sound recording as a form of "distribution" potentially actionable as common-law copyright infringement, and effectively dispensing with or mischaracterizing the established elements of (2) bad faith and (3) special damages of the tort of unfair competition. NAB Br. 27-30.

 NAB recognized that, while the Court may decide these issues *sua sponte*, it may decline to do so because Sirius XM did not raise them, and thus it asked the Court in the alternative to "at least expressly withhold approval of the rulings below." NAB Br. 28. As then-Judge Alito recognized, in permitting the filing of an *amicus* brief, an *amicus* may properly have an interest "in making sure that our court does not inadvertently stray into issues that need not be decided in this case." *Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128, 133-34 (3d Cir. 2002) (chambers opinion of Alito, J.); *see also Am. Broad. Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2511 (2014) (accepting the argument of *amicus curiae* the Solicitor General

8

that the Supreme Court's holding should be limited and not address "'[q]uestions involving . . . novel issues not before the Court, as to which Congress has not plainly marked [the] course'" (quoting Brief for United States as Amicus Curiae)). NAB properly seeks to ensure that this Court understand the identified errors in the district court's analysis so that it may (if it chooses) avoid any statements that lower courts may deem as approval of the district court's treatment of the relevant remedies. Nothing in the four pages devoted to Sections II and III of NAB's brief justifies denial of leave to file the amicus brief in its entirety.

## CONCLUSION

Flo & Eddie, Inc. offers no justification for this Court to deny leave to file a proper *amicus curiae* brief principally devoted to the core issue on appeal, simply because the *amicus* identifies critical, closely rated errors of the district court at the tail end of its brief. Flo & Eddie, Inc. might reasonably have asked the Court to withhold decision on issues that Sirius XM did not raise, such as whether the lower court's decision applies to radio broadcasters. But having failed to do so, it is right and appropriate for NAB to alert this Court "not inadvertently [to] stray into issues that need not be decided in this case," *see Neonatology Assocs.*, 293 F.3d at 133-34 (chambers opinion of Alito, J.), or if it chooses to do so, that it not fall victim to the law of unintended consequences. For all the foregoing reasons, NAB respectfully requests that this Court grant its motion to file an *amicus* brief.

Respectfully submitted,

By:

/s/ Stephen B. Kinnaird
Stephen B. Kinnaird
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
stephenkinnaird@paulhastings.com

Rick Kaplan
NATIONAL ASSOCIATION
  OF BROADCASTERS
1771 N Street, NW
Washington, DC 20036
(202) 429-5430

*Counsel for* Amicus Curiae
*National Association of Broadcasters*

DATED: August 20, 2015

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on August 20, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF.

By:

/s/ Stephen B. Kinnaird
Stephen B. Kinnaird

DATED: August 20, 2015